IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN J. SHUFELDT, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:17-cv-01078 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| BAKER, DONELSON, BEARMAN, ) | |
| CALDWELL and BERKOWITZ, P.C., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Dismiss (Doc. No. 74) ("Motion"). Plaintiff has filed a response in opposition (Doc. No. 83), to which Defendant has filed a reply (Doc. No. 85).

## **BACKGROUND**[1]

This is a legal malpractice action brought by Plaintiff Shufeldt, an Arizona resident, against a Tennessee law firm, pursuant to the diversity jurisdiction of this Court. (28 U.S.C. § 1332).

Plaintiff is the founder of NextCare, Inc. and was the CEO and largest shareholder of what became NextCare Holdings, Inc. ("NextCare"). Plaintiff alleges that in February 2013, he hired Defendant to obtain certain corporate records of NextCare and to advise him concerning potential claims he had against NextCare arising from the dilution, and the devaluation, of his stock. Plaintiff contends that Defendant failed in its undertakings for him by failing to obtain the requested records

---

[1] Unless otherwise noted, these facts are taken from the Amended Complaint (Doc. No. 72) and are accepted as true for purposes of this Motion.

1

and by negligently allowing the statute of limitations to run on his claims without notifying Plaintiff or filing suit.

Plaintiff asserts that he eventually hired new counsel to file suit against NextCare and others ("Nextcare defendants") in state court in Arizona, namely the Superior Court of Maricopa County. There, because of Defendant's negligence, he allegedly was forced to settle his claims ("Nextcare claims") for a fraction of what they were worth. He also alleges that prior to filing suit in Arizona, he entered into a Tolling Agreement with Defendant to toll the limitations period for any legal malpractice claims he had against Defendant. Plaintiff asserts that he and Defendant understood that if he was made whole in the Arizona lawsuit, there could be no need for him to sue Defendant, but otherwise litigation between Plaintiff and Defendant could result.

Via the Motion, Defendant asserts additional facts of which it claims the Court may take judicial notice. For example, Defendant has filed documents from the Arizona litigation ("Underlying Action"), to which Plaintiff has not objected and which the Court may consider without converting the motion to one for summary judgment.[2] In the Underlying Action, the NextCare defendants filed a motion to dismiss on statute of limitations grounds. In opposing that motion to dismiss, Plaintiff argued that his claims were timely filed because (1) the Delaware statute of limitations applied; (2) the statute of limitations did not begin to run until Plaintiff discovered the breach of fiduciary duty in 2015; (3) the Nextcare defendants' fraudulent concealment tolled the statute of limitations; and (4) the Nextcare defendants were equitably

---

[2] In considering a Rule 12(b)(6) motion, the court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to a motion to dismiss provided they are referred to in the complaint and are central to the claims. *Asurion, LLC v. SquareTrade, Inc.,* 407 F. Supp. 3d 744, 748 (M.D. Tenn. 2019).

2

estopped from raising a statute of limitations defense. (Doc. No. 75-2). Plaintiff also made those arguments orally before the Arizona court. (Doc. No. 75-3).[3]

The Arizona court considered these arguments and denied the NextCare defendants' motion to dismiss (Doc. No. 75-3 at 33 and Doc. No. 75-4), finding that the statute of limitations issue, at a minimum, involved disputed issues of fact that the court could not resolve on a motion to dismiss. (*Id*). After the Arizona court denied the motion to dismiss, the parties to the Underlying Action entered into a confidential[4] settlement agreement ("Settlement Agreement") resolving that litigation. (Doc. No. 75-5). Plaintiff now claims that because of Defendant's negligence, the settlement amount was far less than the true value of his claims.

In the Motion, Defendant asserts that Plaintiff's claims should be dismissed because Plaintiff is judicially estopped (due to his assertions in the Underlying Action) from arguing that Defendant negligently allowed the statute of limitations to expire on his NextCare claims.

## **MOTIONS TO DISMISS**

For purposes of a motion to dismiss, the Court must take all the factual allegations in the complaint as true, as the Court has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[3] At times herein, the Court will use the term "prior position" to refer to Plaintiff's assertion in the Underlying Action that his Nextcare claims were not barred by the applicable statute of limitations.

[4] The Settlement Agreement contains a confidentiality provision that precludes the parties from disclosing any information concerning the settlement to any third party. Nevertheless, as acknowledged by Defendant (Doc. No. 75 at 8), the Settlement Agreement obviously was disclosed to Defendant, which has filed a copy in the public record here. (Doc. No. 75-5).

3

defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings

4

and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

As suggested above, in a typical motion under Rule 12(b)(6), the question is whether the plaintiff has alleged enough factual matter to state a viable claim for relief. Here, however, that is not the issue; instead, the issue is whether Defendant's defense of judicial estoppel should be applied to bar Plaintiff's claims at this stage. That is, given the basis of Defendant's atypical motion to dismiss, the question here is whether plaintiff's alleged facts render his claim *not* viable—*i.e.,* subject to judicial estoppel as a matter of law based on (a) the factual matter set forth in the complaint and (b) matters outside the complaint that are properly considered on this Motion based on their being referred to in the complaint.

## JUDICIAL ESTOPPEL

Federal standards govern the application of judicial estoppel in federal court, even in diversity cases. *Watkins v. Bailey,* 484 F. App'x 18, 20 n.1; (6th Cir. 2012); *Terry v. Ethicon, Inc.*, No. 1:19-CV-00175-GNS, 2020 WL 3003051, at *2 (W.D. Ky. June 4, 2020); *Taylor Excavating, Inc. v. Abele Tractor & Equip. Co.*, No. 3:09CV268, 2012 WL 12894224, at *4 (N.D. Ohio Feb. 10, 2012).

The doctrine of judicial estoppel bars a party from asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition. *Audio Technica U.S., Inc. v. United States*, No. 19-3469, 2020 WL 3481702, at *4 (6th Cir. June 26, 2020). The object of the doctrine is to protect the integrity of the judicial process. *Watkins*, 484 F. App'x at 20; *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 599 (6th Cir. 1982) (explaining that the essential

5

function of judicial estoppel is to prevent intentional inconsistency and that the object of the doctrine is to protect the judiciary, as an institution, from the perversion of judicial machinery).

"The purpose of the doctrine is to protect the integrity of the judiciary by preventing a party from convincing two different courts of contradictory positions, which would mean that one of those two courts was deceived." *Audio Technica,* 2020 WL 3481702, at *4. It is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment. *In re B&P Baird Holdings, Inc.*, 759 F. App'x 468, 478 (6th Cir. 2019). Judicial estoppel, however, should be applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement. *Id*. Judicial estoppel "is an equitable doctrine employed at the district court's discretion."[5] *Grise v. Allen*, 714 F. Appx. 489, 494 (6th Cir. 2017).

"[T]he doctrine of judicial estoppel . . . preserve[s] judicial integrity by preventing parties from intentionally 'changing positions according to the exigencies of the moment.'" *Am. Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F. Supp. 3d 1025, 1048 (E.D. Tenn. 2017) (quoting *New Hampshire*, 532 U.S. at 750). The doctrine of judicial estoppel prevents a party from maintaining one position, prevailing on that issue, and then changing positions later to his benefit.

---

[5] This is true despite the fact that under current Sixth Circuit law, the district court's discretionary determination as to judicial estoppel is review not for abuse of discretion, but rather *de novo*. See *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569 (6th Cir. 2020); *Davis v. Fiat Chrysler Automobiles U.S., LLC*, 747 F. App'x 309, 312 & n.2 (6th Cir. 2018). Sixth Circuit panels have been quite aware of "the seeming incongruity of applying *de novo* review to the inherently discretionary decision of a court to apply judicial estoppel" but have felt compelled to perpetuate that incongruity for now in light of still-binding Sixth Circuit precedent. *Id.* at 312 n.2; *see also Grise*, 714 F. App'x 494 n.2; *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 423–24 (6th Cir. 2005).

*Clark v. Shop24 Glob., LLC*, No. 2:12-cv-802, 2016 WL 5533585, at *7 (S.D. Ohio Sept. 30, 2016). When a party convinces a court to take a certain position, and later advocates an inconsistent position, the court can apply the doctrine of judicial estoppel to prevent that party from playing "fast and loose" with the courts. *Han v. Hankook Tire Co.*, 799 F. App'x 347, 349 (6th Cir. 2020) (citing *Edwards*, 690 F.2d at 598–99.

There is no set formula for assessing when judicial estoppel should apply. *Han*, 799 F. App'x at 349 (citing *New Hampshire*, 532 U.S. at 750). However, courts usually focus on three factors. First, for judicial estoppel to apply, a party's later position must be clearly inconsistent with its earlier position. *Id*. Second, a court should review whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. *Id.* Finally, the court should evaluate whether the party advancing an inconsistent position would gain an unfair advantage if allowed to proceed with that argument. *Id*.

A. <u>Clearly Inconsistent and Under Oath</u>

First, if judicial estoppel is potentially to apply, a party's later position must be clearly inconsistent with its earlier position. *Bakery, Confectionery, Tobacco Workers & Grain Millers, Int'l Union AFL-CIO v. Kellogg Co.*, 904 F.3d 435, 441–42 (6th Cir. 2018). Defendant argues that Plaintiff's position in this case—that the statute of limitations had expired on his Nextcare claims—is clearly inconsistent with the position he took in the Underlying Action. As noted above, Plaintiff argued in the Underlying Action that his claims were timely filed because, among other things, the statute of limitations did not begin to run until Plaintiff discovered the alleged breach of fiduciary duty in 2015 and the Nextcare defendants' fraudulent concealment tolled the statute

7

of limitations.[6] Defendant cites to numerous places in the record of the Underlying Action where Plaintiff made these arguments and contends that in the Underlying Action, Plaintiff "championed" the timeliness of his claims to defeat the NextCare defendants' motion to dismiss and to leverage a $2 million plus settlement. (Doc. No. 75 at 3-7 and 13).[7]

Plaintiff does not dispute that his position in the Arizona court was inconsistent with his position herein. Instead, he responds by contending that he did not testify in the Underlying Action, and that therefore his alleged contrary position was not "under oath." Plaintiff cites cases from 1974 and 1990[8] to argue that taking inconsistent positions does not give rise to judicial estoppel when those positions were not taken under oath. At least one court in this Circuit has stated that

---

[6] As the undersigned noted some time ago:

> The term "tolling" is used two different ways. First, "tolling" often refers to a postponement of the date the statute begins to run, usually the accrual date. By contrast, some courts use the term "tolling" to refer to suspending the running of the limitations period after it already has begun to run. Some tolling provisions cannot be placed comfortably in either tolling category, and some tolling provisions can either postpone the starting of the clock or stop it after it begins running, depending upon the timing of the event that triggers the tolling. Nevertheless, the distinction exists and is analytically important.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1039–40 (1997). In the Underlying Action, Plaintiff appeared to use "tolled" in the former sense; *i.e.*, to refer to a postponement of the accrual date. (Doc. No. 75-2 at 13-19)

[7] Significantly, Plaintiff had not argued merely that the motion to dismiss must be denied because there were disputed issues about whether his claim were time-barred. Instead, he argued unqualifiedly that his claims were not time-barred. (Doc. No. 75-2 at 13-19). Thus, even assuming that the former argument (the one he did not make) is sufficiently qualified that it is not inconsistent with his current unqualified position that his claims were time-barred, the latter argument (the one he did make) *is* inconsistent with his current position.

[8] *City of Kingsport v. Steel & Roof Structures, Inc.*, 500 F.2d 617, 619-20 (6th Cir. 1974) and *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990).

the law is not clear as to whether such an oath is required. *Hagan v. Baird*, 288 F. Supp. 3d 803, 809, n.3 (W.D. Mich. 2018).

Even if such an oath is still required, however, the Sixth Circuit has indicated that a party's written court filings, along with arguing the merits of their assertions, may be fairly analogized to taking a position "under oath" for the purposes of judicial estoppel. *See, e.g., Valentine-Johnson v. Roche*, 386 F.3d 800, 812 (6th Cir. 2004) (citing *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23, 30-31 (1st Cir. 2004)); *B&P Baird Holdings,* 759 F.App'x at 482 ("This overly technical argument [that the assertions were not under oath] fails here, in the context of an equitable doctrine that is 'not reducible to any general formulation of principle' and for which 'there are no inflexible or exhaustive prerequisites for determining [its] applicability.'"). In other words, "under oath" does not necessarily mean "literally under oath."

The Court finds that Plaintiff's written court filings and oral arguments before the Arizona court meet the "under oath" requirement, particularly in light of the rules holding that attorneys who sign, file, submit, or later advocate matters to the court are certifying that the claims, defenses and other legal contentions therein are warranted by existing law and the factual contentions have evidentiary support. *B&P Baird Holdings,* 759 F. App'x at 482-83; *see also* Fed. R. Civ. P. 11(b).[9] These rules requiring such (implied) certifications appear to serve a purpose similar to a purpose underlying the requirement of an oath: to impart upon the speaker (or writer) the importance of what is being communicated and the corresponding need to make the spoken (or written) communications in good faith. The attorneys for Plaintiff in the Underlying Action made just such

---

[9] Notably, such rules are applicable not only in federal court pursuant to Rule 11 of the Federal Rules of Civil Procedure, but also in Arizona Superior Court pursuant to Rule 11 of the Rules of Civil Procedure for the Superior Courts of Arizona.

implied certifications in connection with filings in the Arizona Superior Court made on behalf of Plaintiff. These include, for example, not only the complaint (Doc. No. 75-1), but also Plaintiff's brief opposing Nextcare's motion to dismiss, which specifically refutes that Plaintiff's claims were barred by the statute of limitations.[10] (Doc. No. 75-2 at 13-19).

For these reasons, the Court finds that Defendant has shown that Plaintiff's prior position satisfies the "under oath" requirement and was clearly inconsistent with Plaintiff's current position.

B. <u>Acceptance of the Prior Position</u>

Second, courts assess whether the party has succeeded in persuading a court to accept that party's earlier position. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity. *Kellogg*, 904 F.3d at 441–42. The party's prior position must have been actually successful in persuading the prior court "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Am. Guarantee,* 278 F. Supp. 3d at 1048 (quoting *Edwards*, 690 F.2d at 598); *Edwards*, 690 F.2d at 599, n. 5 (explaining that for this factor to cut in favor of judicial estoppel, the party to be estopped need not have finally prevailed on the merits in the first proceeding, so long as that the first court adopted the position urged by the party, either as a preliminary matter or as part of a final disposition); *see also Thompson v. Davidson Transit Org.*, 563 F. Supp. 2d 820, 830 (M.D Tenn. 2008) (citing *Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988) (prior success requirement does not mean the party against whom the judicial estoppel doctrine is invoked must prevail on the merits)) The Sixth Circuit requires that the first court has adopted the position urged

---

[10] Below, the Court will used the term "time-barred" as shorthand for "barred by the statute of limitations."

10

by the party, either as a preliminary matter or as a part of the final disposition, in order for the "success" requirement to have been met. *Thompson*, 563 F. Supp. 2d at 830.

Defendant argues that the Arizona court, in denying the NextCare defendants' motion to dismiss, accepted Plaintiff's statute of limitations arguments. Plaintiff contends that the Arizona case was settled without the statute of limitations issues being resolved and that the Arizona court merely found that it could not resolve the statute of limitations issues on a motion to dismiss.

In denying the motion to dismiss Plaintiff's complaint in the Underlying Action, the Arizona court "adopted" the statute-of-limitations argument of Plaintiff to the extent necessary to defeat that motion, thereby "advanc[ing] [Plaintiff's] position to the detriment of" the NextCare defendants. *See Valentine*, 386 F.3d at 812. The judge in the Underlying Action stated that what was at issue was whether Plaintiff knew that the company was undervalued, and it appeared that he did not know that until 2015. (Doc. No. 75-3 at 33). He denied the motion to dismiss, stating that the statute of limitations issue at a minimum depended on disputed questions of fact that the Court could not resolve at this stage of the litigation. (Doc. No. 75-4 at 1). True, the judge ruled ultimately only that he could not *yet* reject Plaintiff's argument that his claims were not time-barred; he did not unqualifiedly accept Plaintiff's argument that his claims were not time-barred. But as discussed above, for this factor to cut in Plaintiff's favor, there not have to be a final resolution of the statute of limitations issue in favor of Plaintiff; the Arizona court adopted Plaintiff's position to a sufficient extent, as a preliminary matter, to prevent dismissal of the Underlying Action, and this suffices to place this factor in Defendant's column.

Plaintiff cites several cases in which judicial estoppel was held inapplicable because the case settled without the court accepting the inconsistent position for any purpose, preliminary of otherwise. For example, in *American Guarantee*, the court held that the prior position was not

11

Case 3:17-cv-01078  Document 131  Filed 07/23/20  Page 11 of 20 PageID #: 1881

successfully asserted in the underlying action because the case settled. *Am. Guarantee*, 278 F. Supp. 3d at 1048. There is no indication in that case, however, that the inconsistent position was taken through a motion or response thereto or that the court previously considered the inconsistent position in making any ruling. Similarly, in *City of Kingport v. Steel and Roof Structures, Inc.*, 500 F.2d 617 (6th Cir. 1974), the party raised a statute of limitations defense in its answer, but the parties settled before the jury made a decision on that defense. *Id.* at 619. Thus, the issue was never determined because the parties settled. The court stated, "because of the settlement of plaintiffs' case, the defense of the bar of the statute of limitations was never decided, and therefore no estoppel can possibly exist." *Id*. at 620.

Noting that settlements, even in the form of an agreed order, ordinarily do not constitute judicial acceptance of whatever terms they contain, the Sixth Circuit recently reiterated that this factor turns on the party to be estopped having successfully convinced the earlier court that it was right. *Audio Technica*, 2020 WL 3481702, at *5.[11] In *Taylor*, the defendant had sworn in an affidavit in a prior proceeding that the transaction at issue in the case was a "purchase." *Taylor*, 2012 WL 12894334, at *4. The first court, relying upon that affidavit, ordered discovery and compelled appearances of certain witnesses for examination premised on the contention that the transaction was a purchase. The second court in *Taylor* held that the first court did not have to make a final determination on the status of the transaction in order for judicial estoppel to later apply; it simply had to adopt the position as a preliminary matter in issuing its order. *Id.* Judicial

---

[11] In *Valentine-Johnson*, the court held that the prior tribunal (in that case, an administrative judge), even though not explicitly granting the defendant's motion, did adopt and advance the defendant's position to the detriment of Valentine-Johnson, so this factor of judicial estoppel cut in the defendant's favor. *Valentine-Johnson*, 386 F.3d at 812.

12

Case 3:17-cv-01078   Document 131   Filed 07/23/20   Page 12 of 20 PageID #: 1882

estoppel applies if the initial court "adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Id.*

Here, the statute of limitations defense was litigated on a dispositive motion. The NextCare defendants asked the Arizona court to dismiss the case against them on statute of limitations grounds and the court denied that request. After reading and hearing Plaintiff's arguments as to the timeliness of his claims, the Arizona court denied the motion to dismiss. Settlement came *after* the court's ruling. Granted, that ruling did not end the case, but the court accepted Plaintiff's arguments on a preliminary matter, and that decision was to the detriment of the Nextcare defendants. In short, the Arizona court accepted Plaintiff's prior position regarding the statute of limitations to the full extent necessary to deny the motion to dismiss the Underlying Action—the very result Plaintiff sought when asserting his prior position. The Court finds that the Arizona court accepted Plaintiff's prior inconsistent position for purposes of this factor in the judicial-estoppel analysis.

### C. Unfair Advantage

A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Kellogg*, 904 F.3d at 441. Defendant argues it is "patently unfair to permit a litigant to obtain separate recoveries against different parties arising out of the same transaction by flip-flopping positions as the exigencies of the moment require." (Doc. No. 85 at 5). Plaintiff, on the other hand, asserts that Defendant benefitted from Plaintiff's claims against and settlement with the NextCare defendants in the Underlying Action.

13

In W*atkins*,[12] the plaintiff agreed to (and did) settle a medical malpractice action she brought on behalf of her child, after a mistrial was declared based upon her counsel's misbehavior during the trial. *Watkins*, 484 F. App'x at 19. She then brought a legal malpractice action against her counsel based upon the settlement amount allegedly being smaller than it would have been absent her counsel's misbehavior and secret desire to settle to avoid criminal contempt charges. *Id.* In the underlying medical malpractice action, however, approval of the settlement by the court was required. The plaintiff had testified that the settlement was in the best interests of her and her child. *Id*. at 22. The Sixth Circuit held plaintiff to that statement and found that she was judicially estopped to argue, in her legal malpractice action, that the settlement was *not* in her best interests. The court stated that to allow the plaintiff to proceed with her legal malpractice claim would give her an unfair advantage by allowing her potentially to obtain another recovery, against another party, arising out of the same transaction. *Id.* at 23-24 (citing *See McKay v. Owens*, 130 Idaho 148, 937 P.2d 1222, 1229 (1997) , 937 P.2d at 1228 (holding that the plaintiff could not take advantage of settlement from one party—the medical malpractice defendant—and later repudiate the statement made in open court to obtain recovery from her attorneys who were intimately intertwined with the prior proceeding)).

Plaintiff also contends that it would not gain an unfair advantage by asserting a changed position in this case, because Defendant benefitted from the settlement by having its liability to Plaintiff reduced. That may be so, but the defendant in *Watkins* benefited in the same way, and yet the Sixth Circuit did not even consider such benefit in assessing unfair advantage. And the Court can see why. This supposed benefit to Defendant (a reduction of its potential liability to Plaintiff)

---

[12] The Court recognizes that *Watkins* is an unpublished case and thus not precedential. However, in the Court's view it is very much on point and persuasive.

14

would be illusory if Defendant had no liability to Plaintiff. Because *Watkins* teaches that Plaintiff would gain an unfair advantage by pursuing liability against Defendant as a direct result of Plaintiff's change of position, Plaintiff's contention here amounts to this: he does not gain an unfair advantage from his change of position, because the unfairness of his change in position is mitigated by the effects of his original position (a substantial settlement). At best, Plaintiff's contention logically suggests only a reduction in, not an elimination of, the unfairness of the potential advantage he gained by switching positions. Thus, Plaintiff's contention cannot and does not change the reality that this factor weighs in Defendant's favor.

Plaintiff also argues that the present action brings him no unfair advantage, because of the Tolling Agreement. This argument is misplaced. The Tolling Agreement provided merely that Defendant would not raise a statute of limitations defense to any legal malpractice action brought by Plaintiff against it. The Tolling Agreement said nothing about prohibiting a judicial estoppel defense based on Plaintiff previously having refuted a statute of limitations defense raised by other parties on a different kind of action; indeed, the Tolling Agreement said nothing about prohibiting a judicial estoppel defense at all. Plaintiff's citations to Tennessee state cases, such as *Parnell v. Ivy*, 158 S.W.3d 924 (Tenn. Ct. App. 2004), on this issue are also misplaced, since federal standards govern the application of judicial estoppel in federal courts.

Plaintiff alleges in his Amended Complaint that Defendant "understood" that if Plaintiff was not made whole in the Underlying Action, then subsequent litigation with Defendant could be anticipated. In support of this allegation, Plaintiff merely cites the Tolling Agreement's statement that it "serves the mutual interest of the parties and hopefully will serve to avoid litigation between them." (Doc. No. 75-6 at 1). But it is one thing for parties to have a mutual desire to avoid litigation, and it is quite another for them to have a mutual understanding that, despite that mutual desire: (a)

litigation nevertheless may occur under certain circumstances, and (b) if it does, the defendant acquiesces in the litigation because those circumstances are present. Thus, the Tolling Agreement does not refer to or even suggest the alleged "understanding."

      D. <u>Additional Consideration</u>

Citing *Watkins*, Defendant asserts that one additional consideration favors the application of judicial estoppel: if Plaintiff is not estopped from proceeding with this action, the NextCare defendants in the Underlying Action will be deprived of the benefit of their bargain in the confidential Settlement Agreement by "being subjected to extensive discovery obligations in this case and having the terms of the settlement made public." (Doc. No. 75 at 23). *Watkins* indeed counsels the Court to consider this:

> There is the hospital [the defendant in the underlying action] to think about: it entered into a confidential settlement agreement. If the current lawsuit proceeds to trial, the hospital essentially loses the benefit of that bargain, namely to avoid litigation. The hospital would also lose the bargained-for benefit of confidentiality. To prove the legal malpractice claim, the fact finder would have to be made aware of the facts of the underlying medical malpractice claim in order to assess liability and damages.

*Watkins*, 484 F. App'x at 24.

As noted above, the terms of the Settlement Agreement between Plaintiff and the NextCare defendants have already been made public by Defendant's filing of the Settlement Agreement in this case. No one has objected to that public filing; for all the Court knows, all Nextcare defendants consented to this filing.

But even assuming that the Nextcare defendants effectively waived (or forfeited) the confidentiality of the Settlement Agreement for which they bargained, there is no indication that they have also waived the confidentiality of "written or electronic correspondence, work papers or similar documents in any way related to the disputes settled or the claims released hereby," for

16

which they also bargained.[13] In addition, there is there is no indication that the Nextcare defendants have waived or forfeited any interest in the avoidance of litigation for which they unquestionably bargained.[14] If the instant action is allowed to proceed, the Nextcare defendants almost surely will be drawn into this litigation (and conceivably could have to do some litigating of their own to oppose particular subpoenas or discovery requests). Thus, by allowing Plaintiff to change his position from the position he asserted in the Underlying Action on the road to obtaining a substantial (at least in absolute terms) settlement, the Court would jeopardize the benefits of the bargain Defendants obtained in return for agreeing to that settlement in the first place. Plaintiff does not suggest otherwise, and indeed has not even responded to this argument. This consideration clearly cuts in Defendant's favor.

*Watkins* suggests another additional consideration: whether allowing Plaintiff to proceed in this case—by asserting that his Nextcare claims were time-barred—would "undermine" the Arizona court's decision in the Underlying Action. *Id.* That question must be answered in the negative. The Arizona court did not say that Plaintiff was correct in asserting that the Nextcare claims were not time-barred; it said essentially only that it could not yet determine whether they were time-barred (and thus could not dismiss them). Plaintiff's current position cannot be said to undermine the Arizona court's decision.[15] So this consideration weighs in Plaintiff's favor,

---

[13] Page 11 of the Settlement Agreement makes quite clear that the Nextcare defendants bargained for confidentiality as to such information.

[14] Page 2 of the Settlement Agreement makes quite clear that the Nextcare defendants bargained for that.

[15] But this consideration is separate from the primary consideration noted above, *i.e.,* whether Plaintiff's current position is inconsistent with *Plaintiff's prior position*. As discussed above, it is—even though it is not inconsistent with the decision of the Arizona court.

17

essentially counterbalancing, in the Court's view, the consideration in Defendant's favor discussed immediately above.

Finally, Plaintiff relies generally on his contention that Defendant's alleged negligence, the crux of the instant action, caused him to settle his claims in the Underlying Action for a fraction of what they were worth. (Doc. No. 83 at 6, 9). But this contention does not ultimately affect the judicial estoppel analysis. The same contention was made in *Watkins*—in which the plaintiff claimed in her legal malpractice suit that she settled her underlying case for less than she would have absent the legal malpractice—but the Sixth Circuit simply did not count this in her favor. One suspects that is because the contention puts the cart before the horse; the doctrine of judicial estoppel addresses whether the plaintiff can even pursue the legal malpractice claim in the first place, and thus the court should not accept the mere existence of the claim of legal malpractice as grounds not to apply judicial estoppel and instead allow pursuit of the legal malpractice claim.

E. Summary

The application of judicial estoppel turns on the application of a multi-factor test. As the undersigned noted some time ago, the "appl[ication of] a multi-factor test [is] always an unpredictable endeavor." Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1050 (1997). Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 73 (1995) (describing particular multi-factor tests as "inherently insusceptible to predictable results"). As noted above, whether to apply judicial estoppel is a question committed to the discretion of the district court.

Given the discretionary and unpredictable nature of the decision, the Court cannot purport to be able to pronounce a single "right" decision. But what it can do is pronounce the decision it believes is more persuasive under the facts and the law. Here, although Plaintiff has a point or two

18

in his favor, the Court is convinced that the substantially more persuasive decision is to apply judicial estoppel to Plaintiff's claims. In the Court's view, the facts (as alleged in the complaint and as otherwise properly before the Court on this motion under Rule 12(b)(6)) material to the decision are clear. And when they are subjected to relevant case law, it is clear to the undersigned that on balance the applicable factors weigh in favor of the application of judicial estoppel. It is also clear that the purposes of judicial estoppel would be promoted by its application in this case.

## CONCLUSION

Due to the doctrine of judicial estoppel, "[o]ne may not assert a particular position in order to serve one purpose, then assert a wholly contrary position to serve another." *Watkins*, 484 F. App'x at 24 (quoting *McKay,* 937 P.2d at 1227)). The doctrine "preserves the integrity of the courts by preventing a party from . . . achieving success on one position, then arguing the opposite to suit an exigency of the moment." *B & P Baird Holdings, Inc.*, 759 F. App'x at 478 (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). That is precisely what Plaintiff has done here. He asserted in the Underlying Action that his Nextcare claims were not time-barred, and, by convincing the Arizona court that his assertion ultimately could prove right, thereby served his purpose of avoiding dismissal (which doubtless contributed to his success in achieving a substantial settlement). Now, believing that he was not successful *enough* in terms of the settlement amount, he asserts that those claims *were* time-barred.

This is the kind of situation to which, according to applicable case law, judicial estoppel is meant to apply. To be sure, the Court has the discretion not to apply the doctrine. But it is convinced here, based on all of the circumstances, that it should apply it.

For these reasons, Defendant's Motion to Dismiss (Doc. No. 74) will be **GRANTED**, and this action will be dismissed**.**

19

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

20