# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF
# TENNESSEE AT NASHVILLE

| | |
|---|---|
| JOHN J. SHUFELDT, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:17-cv-01078 |
| | ) JURY DEMAND |
| BAKER, DONELSON, BEARMAN, | ) |
| CALDWELL & BERKOWITZ, P.C. | ) JUDGE RICHARDSON |
| | ) MAGISTRATE JUDGE |
| Defendant. | ) NEWBERN |

## SECOND AMENDED COMPLAINT

### I. INTRODUCTION

1. This is an action for damages arising out of the legal malpractice committed by Defendant Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., ("Baker Donelson"). Baker Donelson, through its attorneys, failed to exercise reasonable care and diligence in representing Plaintiff Dr. Shufeldt in regard to breach of fiduciary duty claims he had as a stockholder of NextCare Holdings, Inc., ("NextCare"), a Delaware corporation which has its principal place of business in Arizona. Baker Donelson failed to get corporate records from NextCare it was hired to obtain. Baker Donelson also failed to determine the statute of limitations for Dr. Shufeldt's claims or give Dr. Shufeldt any specific information as to the filing deadlines for his claims before they became time-barred. Baker Donelson's negligence was the direct and proximate cause of financial lost to its client Dr. Shufeldt.

## II. PARTIES

2. Plaintiff John J. Shufeldt, M.D., is a resident and citizen of Maricopa County, Arizona. Dr. Shufeldt is the founder of NextCare, Inc., and formerly the Chief Executive Officer and largest stockholder of what became NextCare Holdings, Inc. NextCare became a success largely as a result of Dr. Shufeldt's hard work and ingenuity.

3. Baker Donelson is a professional corporation, organized and existing under the laws of the State of Tennessee with its principal place of business located at First Tennessee Building, 165 Madison Avenue, Suite 2000, Memphis, TN 38103. It is a citizen of Tennessee. Baker Donelson also has offices in Birmingham, Alabama, where it undertook to provide legal services for Dr. Shufeldt.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over the causes of action set forth in this Amended Complaint pursuant to the terms and provisions of 28 U.S.C. § 1332. There is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, greatly exceeds the sum of $75,000.

5. Plaintiff avers that venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(d) as Baker Donelson has an office in Nashville and resides in Nashville and Davidson County, in the Middle District of Tennessee.

## IV. FACTS - THE OCTOBER, 2010 NEXTCARE TRANSACTION

6. In 2009, a private equity fund and outside investor named Enhanced Equity Fund, ("EEF"), became the controlling stockholder of NextCare and Dr. Shufeldt's ownership interest in NextCare was reduced to 42%. Two managing partners of EEF,

including its managing general partner, Andrew Paul, became members of NextCare's Board of Directors, and half of NextCare's directors were EEF appointees.

7. In August, 2010, Dr. Shufeldt resigned his position as Chairman of the Board of NextCare. Dr. Shufeldt was replaced as Chairman of the Board by Malcolm Kostuchenko, who was the other EEF managing partners sitting on NextCare's Board. EEF soon took action to increase its ownership interest in NextCare at the expense of Dr. Shufeldt by buying a new class of preferred stock at a deep discount.

8. EEF's lawyers proceeded to draft corporate documents, which provided for the creation of a new class of NextCare preferred stock, Series C Preferred Stock, which would be purchased primarily by EEF and its associates at a conversion price to NextCare common stock of 7 cents a share. On September 24, 2010, this transaction was preliminarily approved by board call of the NextCare directors. However, on the evening of Sunday, October 3, 2010, Kostuchenko emailed NextCare's directors to present a very different transaction. The NextCare directors were asked to approve the issuance of the contemplated Series C Preferred Stock, but under terms where all of the stock would be purchased by EEF and its associates, and the new conversion price of the Series C Preferred Stock would be reduced from 7 cents a share to 2 cents a share. At this point in time, NextCare common stock had a value of 30 cents per share. The NextCare directors immediately approved this transaction on October 5, 2010 by a Written Action in Lieu of a Meeting of the Board of Directors.

9. Beginning in October, 2010, and continuing into early 2011, EEF and its associates invested $2,500,000 to purchase the Series C Preferred Stock at the deeply

discounted price of 2 cents per share. As a result, EEF's ownership interest in NextCare more than doubled, from 32% to 68%, while Dr. Shufeldt's ownership interest in NextCare was reduced by more than three-quarters, from 42% to 10%. The NextCare directors were well aware of how the issuance and sale of Series C Preferred Stock to EEF would impact the ownerships interests of EEF and Dr. Shufeldt before they approved the transaction.

10. EEF, as controlling shareholder of NextCare, as well as the EEF managing partners Kostuchenko and Paul who also sat on the NextCare board, stood on both sides of the 2010 Series C Preferred Stock Transaction and had a clear conflict of interest. EEF profited at the expense of NextCare and the holders of NextCare common stock such as Dr. Shufeldt and derived a benefit that was not available to NextCare's other shareholders. EEF, Kostuchenko and Paul breached fiduciary duties of loyalty, care and good faith that they owed to Dr. Shufeldt. Because they knowingly breached their duties of loyalty and good faith, engaged in self-dealing and obtained personal benefits at Dr. Shufeldt's expense, they were subject to liability to Dr. Shufeldt and bore the burden of proving the entire fairness of the October, 2010 NextCare transaction under Delaware law.

11. The remaining NextCare directors also breached the fiduciary duties of loyalty, good faith and care they owed to Dr. Shufeldt as a minority shareholder. They were obliged not to participate in any transaction where directors or controlling shareholders had divided loyalties; or where said persons or entities received financial

benefits not equally shared by, or at the expense of, the minority shareholders. They, too, bore the burden of providing the entire fairness of the transaction.

V.   FACTS - BAKER DONELSON'S REPRESENTATION OF DR. SHUFELDT

12.   On February 11, 2013, Dr. Shufeldt executed an engagement agreement prepared by Baker Donelson. (Exhibit 1). Dr. Shufeldt wanted Baker Donelson to obtain corporate documents from NextCare and investigate potential claims arising from the dilution and devaluation of his shares of NextCare stock. Unfortunately, Baker Donelson totally failed in this undertaking.

13.   Baker Donelson was fully aware of Dr. Shufeldt's desire and intent to pursue viable derivative or direct claims he may have had against NextCare. With the assistance and support of Dr. Shufeldt, Baker Donelson submitted a written demand to NextCare for the production of the pertinent corporate records pursuant to Delaware Code § 220. After Baker Donelson's request for records was rebuffed by a letter from NextCare's counsel, Baker Donelson prepared a response letter - a "Reiterated Demand for Inspection of Books and Records" - addressed to NextCare's counsel. On or about October 18, 2013, more than seven months after the response letter had been prepared, Baker Donelson informed Dr. Shufeldt that it had failed to send the letter. Although Baker Donelson represented Dr. Shufeldt for more than eighteen months, it never succeeded in obtaining any books or records from NextCare, and it never filed suit for Dr. Shufeldt against NextCare under Delaware Code § 220 to gain access to its books and records.

14.   During the time that Baker Donelson represented Dr. Shufeldt, the statutes of limitations on Dr. Shufeldt's breach of fiduciary duty claims expired. Those claims

5

became time-barred before Baker Donelson gave Dr. Shufeldt any specific information as to filing deadlines and before Baker Donelson had conducted any research to determine what the filing deadlines were. Baker Donelson did not advise Dr. Shufeldt that his October, 2010 breach of fiduciary duty claims were subject to a **three year** statute of limitation until October, 2014, **four years** after the transaction had taken place.

15. Dr. Shufeldt subsequently terminated Baker Donelson, executed a tolling agreement with the firm and engaged replacement counsel to assert the breach of fiduciary duty claims arising from the October, 2010 NextCare transaction. Suit was filed on behalf of Dr. Shufeldt in Arizona. Due to the statute of limitations problems arising from Baker Donelson's negligence, Dr. Shufeldt's claims were settled for a fraction of their value without any testimony from Dr. Shufeldt and without the statute of limitations questions being resolved by the Arizona court.

### VI. CAUSE OF ACTION - LEGAL MALPRACTICE

16. Baker Donelson was negligent and breached the applicable standard of care by failing to affirmatively and timely inform Dr. Shufeldt of the potential time bar applicable to his October, 2010 breach of fiduciary duty claims and the possible loss of his ability to assert such claims if suit was not timely filed. Baker Donelson also was negligent as it failed to get the corporate books and records it was hired to obtain. Because of Baker Donelson's negligence, Dr. Shufeldt failed to file a complaint by the required date and he was forced to settle his case for much less than what he would have recovered through trial or settlement but for the negligence of Baker Donelson. The

negligence of Baker Donelson was the sole, direct and proximate cause of the damages suffered by Dr. Shufeldt, who is free from any act of negligence in this matter.

**WHEREFORE,** premises considered, Dr. Shufeldt respectfully demands a jury to try this matter and:

1. Compensatory damages equal to the difference between the sum he would have received but for Baker Donelson's negligence and the net amount he received through settlement; or, alternatively, the difference between the amount of rescissory damages he would have received from the defendants in the underlying action and the net amount he received through settlement;

2. The return of all sums paid to Baker Donelson for negligently performed work;

3. Attorneys' fees and costs incurred in pursuing the present action;

4. Prejudgment interest;

5. Taxable costs and appropriate general relief.

                Respectfully submitted,

                /s/ August C. Winter
                August C. Winter
                Attorney for Plaintiff John J. Shufeldt, M.D.
                Tennessee Bar No. 009706
                Two Brentwood Commons, Suite 150
                750 Old Hickory Boulevard
                Brentwood, TN 37027
                (615) 371-6152
                gwinterlawoffice@comcast.net

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on W. Scott Sims, SIMS|FUNK, PLC, 3322 West End Avenue, Suite 200, Nashville, TN 37203, through this Court's CM/EFC system on this the ___ day of _____, 2022.

/s/ August C. Winter